UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS MONTANO, | No. 2:19-cv-00650 TLN GGH P |
| Petitioner, | |
| v. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| M. ELIOT SPEARMAN, | |
| Respondent. | |

*Introduction and Summary*

    Petitioner, a state prisoner proceeding through counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and Local Rule 302(c).

    Petitioner was convicted of several counts of attempted murder on an aiding and abetting theory, including one count of attempted murder of a police officer, and was ultimately sentenced to 42 years to life imprisonment. Respondent has filed a motion to dismiss based on expiration of the Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year statute of limitations. ECF No. 8. Petitioner does not contest that the statutory limitations period had expired, prior to the filing of the federal petition, but opposes the motion based solely on his claim of actual innocence.

1

Although respondent errs in the analysis of statutory tolling, the mistake is immaterial as petitioner waited over a year from the denial of his state supreme court habeas petition to the filing of the federal petition. Petitioner, understanding that this petition would be otherwise barred by the AEDPA limitations period, claims that but for the constitutional due process error in the admission of inadmissible and highly prejudicial gang evidence, he would have not been convicted of the attempted murders as an aider and abettor. Therefore, the argument continues – he is "actually innocent" of the attempted murders. Petitioner mistakes a colorable *legal* claim in habeas corpus for a claim of actual (factual) innocence. The lack of a colorable assertion of actual innocence requires dismissal of this habeas petition.

*Procedural Background*

Because petitioner does not contest the fact that without a viable claim for actual innocence, this action is barred by the AEDPA limitations period, the undersigned will move quickly through the essential procedural facts. Moreover, discussion of the evolution of the prejudicial evidence claim will be set forth in the actual innocence section.

No dispute is made concerning the finality date of petitioner's conviction for AEDPA purposes—that date is November 29, 2016.[1] Without statutory tolling, the AEDPA limitations date would expire on November 29, 2017. Petitioner's first collateral review petition, in which the prejudicial evidence claim was initially made, was filed in Superior Court on May 25, 2017. ECF No. 9-4. The petition was denied on July 21, 2017 on a procedural default basis of a Dixon bar—the claim should have been raised on direct appeal—and on the merits. ECF No. 9-5. The Court of Appeal petition, filed October 27, 2017, was denied without explanation on November 2, 2017. ECF Nos. 9-6, 9-7. The state supreme court petition, filed November 8, 2017, was denied on January 17, 2018, also without explanation. ECF Nos. 9-8, 9-9. Therefore, it is presumed that the latter two petitions were denied for the reasons set forth in the Superior Court petition. Wilson v. Sellers, 138 S. Ct. 1188 (2018); Ylst v. Nunnemaker, 501 U.S. 797 (1991). It is significant to note that *none* of the state habeas petitions were denied for having been untimely

---

[1] Where certain dates are undisputed, or indisputable, the undersigned will not engage in discussion of those dates, either factual or legal.

filed under state law. The instant federal habeas petition was filed on April 17, 2019.

*AEDPA Limitations Calculation*

A petitioner must file a federal petition for habeas corpus within one year of the finality of the conviction (or three other specified times not applicable here). 28 U.S.C. § 2244 (d)(1)(A). This one-year period can be tolled for reasons of statutory tolling, id. at (d)(2), or equitable tolling (not requested here). Without getting into all the complexities of statutory tolling, a petitioner is entitled to have the AEDPA limitations period tolled during the actual pendency of a state petition, and the gaps of time between the filing of state petitions—if the periods of time between filings in the state court are "reasonable lengths" of time (generally no more than 60 days, described as "gap tolling."). See Evans v. Chavis, 546 U.S. 189 (2006).

However, if a state court petition is denied for being untimely, it is not "properly filed" for tolling purposes. Pace v. DiGuglielmo, 544 U.S. 414, 417 (2005). Hence, the pendency of that petition for AEDPA statutory tolling purposes, including gap tolling, is as if the petition(s) had never been filed. Much of the time, the inability to validly assert any tolling will render the petition filed in federal court untimely.

Respondent asserts that petitioner is not entitled to statutory tolling after the denial of the Superior Court petition because the latter two state petitions were untimely filed. However, respondent conflates the principles of federal gap tolling (the periods of time between the filing of state petitions must be reasonable—with an *express* finding by a state court that the state petitions were untimely filed *under state law*). See Walker v. Martin, 562 U.S. 307 (2011) (discussing In re Robbins, 18 Cal. 4th 770, 780 (1998) and In re Clark, 5 Cal. 4th 750 (1993), setting forth timeliness standards, including discretionary exceptions, under state law). The necessity of a finding by the state courts that a filing is untimely in order to raise the Pace "not properly filed" holding is well illustrated in Bonner v. Carey, 425 F.3d 1145, 1149 (2005) (emphasis added): "Under *Pace*, *if a state court denies a petition as untimely*, none of the time before or during the court's consideration of that petition is statutorily tolled." It is not up to the federal courts to determine in the first instance whether an untimely filing occurred under state law with respect to

////

3

state habeas petitions. The federal court may only determine whether the gaps between filings were unreasonably delayed for purposes of the federal tolling analysis.

The practical effect between the two principles can sometimes be the life or death of a federal habeas petition. In a situation where a Superior Court habeas petition is found untimely filed, by reason of an explained state court order stating thus, followed by the higher courts implied acceptance of the lower court's reasoning through unexplained denials of its habeas petitions, *none* of the time during actual pendency of state petitions, and *none* of the time between filings in state court, can count for statutory tolling because all courts have found the petitions untimely filed. However, absent at least one explained determination of untimeliness by the state courts, the actual pendency of the state petitions does count for statutory tolling; it is only the gaps between filings which may be excluded from the statutory tolling. Clearly, what may be the limitations death knell in the former example, where none of the time counts for tolling, may ultimately not matter in the latter—at least the time of actual petition pendency during the state court process in the latter scenario will count for tolling.

Again, here, *no* state petition was denied on the grounds of its being untimely under state law; all the state petitions were "properly filed;" the federal court cannot substitute its own ruling to the contrary, effectively overruling the state courts. Respondent has incorrectly asserted that petitioner is not entitled to any statutory tolling after the denial of the Superior Court petition due to the unreasonably delayed state filing of the Court of Appeal petition because none of the petitions thereafter were properly filed. Although the undersigned need not specifically analyze for reasonableness that discrete "gap"—90 day plus period—because petitioner does not contest the unreasonableness of the delay in filing, the actual pendency of the Court of Appeal petition, the reasonable gap between that decision and the filing of the state supreme court petition, and the pendency itself before the California Supreme Court will count for AEDPA statutory tolling.

Thus, the correct calculation of the expiration of the AEDPA limitations is as follows.

1. As briefed by respondent, 176 days expired between the finality of the conviction and the filing of the first state habeas petition on May 25, 2017 (no tolling is permitted prior to the filing of the first state habeas petition). However, all parties agree that the

4

| | |
|---|---|
| 1 | AEDPA limitations period was tolled from May 25, 2017 until July 21, 2017 when the |
| 2 | Superior Court petition was denied. Thus, 176 days had expired and only 189 days of |
| 3 | the AEDPA one-year limitations period remained as of July 21, 2017. |

2. The Court of Appeal petition (filed October 27, 2017) was properly filed because the appellate court did not find that the petition was untimely under state law. Indeed, the Court of Appeal is presumed to have adopted the rationale of the Superior Court decision which had nothing to do with timeliness. Therefore, the actual pendency of the appellate petition (October 27, 2017 to November 2, 2017)—6 days—was statutorily tolled. However, the period of time between the denial of the Superior Court petition and the filing of the appellate court petition (97 days) was unreasonable for *federal* gap tolling purposes,[2] and, therefore, the gap time of 97 days does not count for statutory tolling. At this juncture, i.e., the denial of the appellate petition, a total of 273 days of the AEDPA limitation period had expired leaving 92 days remaining.

3. The period of time between the denial of the state appellate petition and the filing of the state supreme court petition (November 8, 2017) was reasonable; therefore, this gap period was statutorily tolled and no days of the AEDPA limitations period expired during this time.

4. No finding of untimeliness under state law having been made by the California Supreme Court for the petition filed there, the petition was properly filed, and the days it was pending there until the denial of this petition were tolled for AEDPA statutory tolling purposes. Therefore, as of January 17, 2018, the date the California Supreme Court denied its petition, the expired and remaining days of the AEDPA limitations period stood as they were in paragraph 2 above—92 days remained—giving petitioner plenty of time to file the instant federal habeas petition.

////

---

[2] Again, petitioner correctly does not take issue with respondent's "unreasonableness" position on this period of gap tolling. See respondent's briefing in the Motion to Dismiss. Respondent's position is therefore accepted by the court without further explanation.

5. For reasons unexplained by petitioner, no federal filing was made until April 17, 2019. This unexplained lapse of time from the denial of the state supreme court petition amounting to 455 days so far exceeded the remaining days in which to timely file a federal petition, that this lapse in and of itself made the filing in excess of the AEDPA limitations 365-day period.

Petitioner does not assert equitable tolling, so no tolling can take place for equitable reasons. The federal petition is untimely unless it is saved by the "actual innocence" exception to the AEDPA limitations requirement.

*Actual Innocence*

Normally, when a claim for actual innocence is made to avoid the AEDPA limitations bar, a complete rendition of the facts is necessary. However, in this case, as discussed below, because petitioner's claim is one for legal innocence and not factual, actual innocence, it is only necessary to provide a brief factual background.

> After defendant Frank Delamora fired 20 to 30 rounds from an AK–47 type assault rifle at men he believed to be rival gang members, he and defendant Jesus Ceja Montano led the police on a high-speed chase with Delamora continuing to fire the assault rifle out of Montano's passenger window. The chase ended when the pursuing police officer lost sight of the car as it sped down the freeway. In its simplest form, Montano's defense at trial was that the events of that night were a surprise to him, and his driving was motivated by fear, shock and the shooter's orders. Montano took this position notwithstanding that he was the owner of the assault rifle. For his part, Delamora contended the prosecution had not established that he was the shooter.
>
> On January 16, 2014, defendants were charged by amended information with nine counts of attempted murder, each as to a different civilian (counts 1–4, 7–11); attempted murder of a peace officer (count 5); assault with a semiautomatic firearm on a peace officer (count 6); discharging a firearm at an occupied motor vehicle (count 12); and discharging a firearm at an inhabited dwelling house (count 13). It was alleged as to all counts that the crimes were committed for the benefit of, at the direction of or in association with a criminal street gang—the Sureños—with the specific intent to promote, further or assist in criminal conduct by gang members. (Pen. Code, § 186.22, subd. (b)(1).) [footnote omitted].

People v. Delamora (and Montano), No. C076142, 2016 WL 3098423, at *1 (Cal. Ct. App. May 25, 2016).

As set forth in the Opposition to the Motion to Dismiss, ECF No. 13, petitioner's gang enhancement conviction was reversed pursuant to People v. Prunty, 62 Cal. 4th 59 (2015) (court held evidence must show relationship between gang subsets and the overarching gang). Petitioner was eventually resentenced without the gang enhancement.

Petitioner's argument is that the jury was poisoned by evidence of petitioner's and his co-defendant's association with the Sureño gang, and but for this "fundamentally unfair" evidence (as it later turned out), no reasonable jury would have convicted him of the attempted murders.[3] He therefore claims "actual innocence."

The legal backdrop for avoiding the AEDPA limitations bar on account of actual innocence is well stated in Dean v. Callahan, No. 1:18-cv-01577-SKO (HC), 2018 WL 6111012, at *2-3 (E.D. Cal. Nov. 21, 2018):

> In *McQuiggin v. Perkins,* the United States Supreme Court held that "actual innocence" can be an exception to the one-year limitations period:
>
>> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, ..., or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup [v. Delo]*, 513 U.S. [298,] 329 [ (1995) ]; see *House [v. Bell]*, 547 U.S. [518,] 538 [ (2006) ] (emphasizing that *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332.
>
> 569 U.S. 383, 386 (2013).
>
> However, the "actual innocence gateway," may only be employed when a petitioner "falls within the 'narrow class of cases ... implicating a fundamental miscarriage of justice.' " *Schlup*, 513 U.S. at 314-15 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) ). A petitioner must demonstrate factual innocence and "not mere legal insufficiency." *Bousely v. United States*, 523 U.S. 614,

---

[3] Under California law, aiders and abettors are considered principals to the underlying crime. Cal. Penal Code § 31; People v. McCoy, 25 Cal. 4th 1111, 1116-1117 (2001).

7

623 (1998). Consequently,

> [t]o be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."

*Schlup*, 513 U.S. at 324. Further, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

Case after case requires a *factual* showing of actual innocence, not just a claim of error with the afterwards conclusion that such error involved fundamental fairness.

> The required evidence must create a colorable claim of actual innocence, that the petitioner "is innocent of the charge for which he [is] incarcerated," as opposed to legal innocence as a result of legal error. [*Schlup v. Delo, 513 U.S.*] at 321, 115 S.Ct. 851 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 452, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)); *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

Ganderla v. Johnson, 286 F.3d 1080, 1085 (9th Cir. 2002). See also Marrero v. Ives, 682 F.3d 1190, 1193 (9th Cir. 2012).

Examples of the distinction between "factual" and "legal" innocence abound:

> Second, the evidence of Joseph's age is not evidence of actual innocence. The mischarging of Counts 2 and 6 as crimes against a child younger than 14 could support, at most, a claim of technical, legal innocence as to those counts. A showing of legal innocence is insufficient, however. *See Smith v. Murray*, 477 U.S. 527, 537 (1986) ("the miscarriage of justice exception is concerned with actual as compared to legal innocence"); *Bousley*, 523 U.S. at 623-24 (actual innocence "means factual innocence, not mere legal insufficiency."). Petitioner could have been charged with other crimes, including sexual assault on a sixteen year old, on the basis of the conduct underlying Counts 2 and 6. *See* Cal. Penal Code § 261.5; *see also id.*, § 261. Petitioner has presented no evidence, and does not contend, that he did not commit the charged acts of sexual assault against Joseph in February and March 2002. This failure of proof dooms his claim of actual innocence.

Morris v. McDonald, No. 2:16-cv-0771 JAM AC P, 2016 WL 7212786, at *5 (E.D. Cal. Dec. 13, 2016)

\*\*\*

> Moreover, while petitioner appears to claim that he is actually innocent of attempted murder because the injuries suffered by his

8

> victim were not sufficient to support that charge, he also appears to concede that he was guilty of committing lesser offenses against the victim. Insofar as petitioner is claiming legal innocence or innocence as a result of prosecutorial misconduct or ineffective assistance of counsel, he has failed to raise a proper and cognizable claim within the meaning of the "actual innocence" exception under *Schlup. See Gandarela v. Johnson*, 286 F.3d 1080, 1085 (9th Cir. 2002) ("The required evidence must create a colorable claim of actual innocence, that the petitioner 'is innocent of the charge for which he [is] incarcerated,' as opposed to legal innocence as a result of legal error."); *Burleson v. Cal. Dep't of Corrs. & Rehab.*, No. C 08–01853 SBA (PR), 2009 WL 2941516 (N.D. Cal. Sept. 10, 2009) (petitioner's claim that he was innocent of murder and should have been convicted only of voluntary manslaughter instead was a legal innocence claim and not a proper "actual innocence" claim under *Schlup*).

Gerolaga v. Kramer, No. CIV S-08-2542 LKK DAD P, 2009 WL 3627940, at *6 (E.D. Cal. Oct. 29, 2009).

\*\*\*

> However, as discussed above, actual innocence means just that: factual and actual innocence of the charge, not merely legal innocence. In other words, "actual innocence" is not met merely by presenting constitutional claims the might require reversal of his conviction and a new trial. Unless Petitioner can produce evidence establishing his factual innocence of the charges for which he was convicted in 1994 under *Schlup,* he cannot use the actual innocence doctrine to avoid the one-year limitation period.

Rimpson v. Mule Creek Prison Warden, No. 1:15-cv-01499-LJO-JLT, 2015 WL 6689574, at *5 (E.D. Cal. Oct. 29, 2015).

Petitioner's claim clearly involves only legal innocence. He posits a claim of prejudicial evidence, as it turned out, without which the jury would undoubtedly have felt that the evidence to convict was insufficient. Not only is the claim of admission of prejudicial evidence of doubtful legal validity in the first place with respect to federal habeas corpus, see Holley v. Yarborough, 568 F.3d 1091, 1101(9th Cir. 2009), it is simply a garden variety assertion of evidence error, which without its admission, would surely have resulted in a different verdict, i.e., the evidence was insufficient without the inadmissible evidence. Petitioner does not posit *facts* showing his innocence of the attempted murder aiding and abetting, the *sine qua non* of actual innocence. Petitioner's claim here is no different than the alleged introduction of prior bad acts which

9

allegedly, fundamentally affected the verdict, or that an expert's opinion was without sufficient foundation but it "sealed" the verdict, or that if the DNA evidence had not been admitted, the defendant would not have been convicted. Indeed, if petitioner's argument were to be accepted, *every* significant, alleged evidentiary error could be deemed "fundamental" and result in an actual innocence assertion. There would, in effect, be no meaningful AEDPA statute of limitations. Petitioner's argument would make the actual innocence "rare exception," instead the rule. Accordingly, the actual innocence exception to the AEDPA one-year statute of limitations does not apply here.

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 8) be granted;
2. The petition be dismissed with prejudice as untimely; and
3. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

////
////
////
////

shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 7, 2019

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE